OPINION. OppeR, Judge: These facts, of course, are basically comparable to those in American Light & Traction Co., 42 B. T. A. 1121; affd. (C. C. A., 7th Cir.), 125 Fed. (2d) 365. There are, it is true, certain deviations, as respondent points out. In the present case petitioner’s change of position was not brought to respondent’s attention until the statute had run on the earlier year. And the amount of tax demanded of petitioner would be less if respondent succeeded in this proceeding than would have been due had the original transaction been viewed in what we now know to be the proper light. The opposite was the case on both heads in American Light & Traction Co. and the opinion includes comments to that effect. But it seems clear that these considerations were mere makeweights and that the fundamental doctrine adopted by the Board there went beyond any such detail. There is no true “estoppel” in this proceeding any more than in American Light & Traction Co., since the facts were fully disclosed when the return for the earlier year was filed. If the petitioner there had no election, he had no greater one here. The law as it now stands would have compelled a single method of treatment. Le Tulle v. Scofield, 308 U. S. 415. And it certainly would not be realistic to construe petitioner’s dealings with respondent as a waiver by agreement when all that appears is a presentation of petitioner’s view of the law in a discussion typical of innumerable controversies between taxpayers and administrative officials. In our view, accordingly, the case is not to be distinguished from American Light & Traction Co., sufra, and on the authority thereof, the conclusion must be that the bonds acquired a new basis in decedent’s hands and did not automatically retain the basis of. the stock he had previously held. What that new basis was, however, remains to be decided. It is almost trite to point out that the general rule under section 113 of the various revenue acts is that basis is cost. Poncin Corporation, 27 B. T. A. 328. And none of the exceptions or adjustments prescribed by that section are asserted to be relevant here. Certainly there is nothing in the statutory provisions which calls for the application under these circumstances of a basis computed by using fair market value when acquired. See Poncin Corporation, sufra., p. 335. Just as the cost of property purchased for cash is the amount of money •given for it, so it would seem to follow in a strict sense that the cost of property acquired in an exchange is what the recipient parts with, that is, the value of the property given in exchange. Of this there is no specific proof. The principal disputed question of fact to which the evidence at the hearing was directed was the fair market value of the bonds when they were received and not that of the stock which was given in exchange. We think it fair to say, however, that ordinarily properties exchanged for one another can be assumed to be of equal value. There may be exceptions where one party to the transaction .obtains the better of the deal, but no sug-gestión is made by respondent that this is such a situation and the case was not tried upon that theory. We proceed, therefore, from the premise that in this case the fair market value of the stock and assets transferred, less the cash received, which was the cost and therefore the basis of the bonds, ivas substantially equal to the fair market value of the bonds at that time. See Countway v. Commissioner (C. C. A., 1st Cir.), 127 Fed. (2d) 69. The factual controversy as to the fair market value of the bonds we have determined in petitioner’s favor. On the evidence we think there can be no reasonable doubt that the bonds when received were worth at least $147,976.30, and we have so found as a fact. Without reviewing the evidence in any detail, the financial position of the debtor, general business conditions, and the terms of the instruments make it appear unlikely in the extreme that such obligations would then have been worth less than 75 percent of their face value. On that valuation there was no taxable gain in these years. We therefore find it unnecessary to decide how much, if any, more than the figure given these bonds may have been worth. So far we have discussed the transaction on the assumption that it was an exchange. Respondent’s brief continually refers to it as a “distribution” or as a “dividend.” Without deciding whether this was technically an exchange or a distribution, it seems evident that if it was the latter it would have to be treated as a distribution in liquidation or out of capital. The new company, Delaware, which distributed the proceeds of the exchange to its stockholders, had no accumulated earnings and profits. Cf. Estate of Howard H. McClintic, 47 B. T. A. 188. Respondent does not contend that it “inherited” any of the earnings or profits of its predecessor, American, under the doctrine of Commissioner v. Sansome (C. C. A., 2d Cir.), 60 Fed. (2d) 931; certiorari denied, 287 U. S. 667, a case which dealt with a tax-free transaction, whereas this is now recognized as having been wholly taxable. Nor did any gain result to Delaware from the exchange transaction itself, since the fair market value of what it received was the same as its basis for what it gave — that is, the stock and assets of American which it had in turn acquired for the issuance of its shares. See Ida I. McKinney, 32 B. T. A. 450; affd. (C. C. A., 10th Cir.), 87 Fed. (2d) 811. Since a distribution in liquidation is treated as being received in exchange for the stock and any other distribution from capital is taxable in the same manner as a gain from the sale or exchange of property, the end result is no different from viewing the transaction as an exchange in the first place. This accordingly differs from an ordinary dividend or other receipt which costs the recipient nothing, see Greenwood Packing Plant, 46 B. T. A. 430, and where perhaps the failure to report the transaction in the earlier year would give the property a basis of zero and require the entire proceeds to be included in income upon disposition. Estate of H. II. Timken, 47 B. T. A. 494. Nor is the Court in any position to sustain respondent’s affirmative defense of recoupment to the extent of the claimed overpayment in view of the “controlling evidences of the Congressional purpose by the enactment of sections 607' and 609 [Revenue Act of 1928] to require refund to the taxpayer of an overpayment, even though he has failed to pay faxes for other periods, whenever their collection is barred by limitation,” McEachern v. Rose, 802 U. S. 56. The deficiencies were accordingly improper and the claim of overpayment must be allowed. Reviewed by the Court. Decision toill be entered wnder Ride 50.