*Decision will be entered under Rule 50.*

NORTH JERSEY QUARRY CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 16182. Promulgated August 11, 1949.

*Benjamin Harrow, C. P. A.,* for the petitioner.
*Francis X. Gallagher, Esq.,* for the respondent.

196

OPINION.

OPPER, *Judge* : Although asserting that its excess profits credit based on invested capital should`be computed under the general provisions of section 718 of the code, rather than the limited terms of section 761, petitioner nevertheless contends that even under the latter section its tax was correctly arrived at and the deficiency is unwarranted. We are compelled to consider both contentions.

Section 761 is in terms designed to apply to "an intercorporate liquidation." The effort is reasonably manifest to reach such liquidations only if they were tax-free,[1] but word for word the statutory language applies here. There was "an intercorporate liquidation" because petitioner was in "receipt  *  *  *  of property in complete liquidation of another corporation  *  *  *  to which  *  *  *  a provision of law  *  *  *  [was] applicable prescribing the non-recognition of gain or loss in whole or in part upon such receipt (including a provision of the regulations applicable to a consolidated income  *  *  *  tax return  *  *  *)." [2]

As petitioner points out, no statutory counterpart of section 112 (b) (6) appears in the applicable 1928 Act. But petitioner could and did file with its subsidiary a consolidated return for the period in-

---

[1] "SEC. 761. INVESTED CAPITAL ADJUSTMENT AT THE TIME OF TAX-FREE INTERCORPORATE LIQUIDATIONS."

[2] SEC. 761. *  *  *

(a) DEFINITION OF INTERCORPORATE LIQUIDATION.—As used in this section, the term "intercorporate liquidation" means the receipt (whether or not after December 31, 1941) by a corporation (hereinafter called the "transferee") of property in complete liquidation of another corporation (hereinafter called the "transferor") to which

(1) the provisions of section 112 (b) (6), or the corresponding provision of a prior revenue law, is applicable or

(2) a provision of law is applicable prescribing the non-recognition of gain or loss in whole or in part upon such receipt (including a provision of the regulations applicable to a consolidated income or excess profits tax return but not including section 112 (b) (7), (9), or (10) or a corresponding provision of a prior revenue law), but only if none of such property so received is a stock or a security in a corporation the stock or securities of which are specified in the law applicable to the receipt of such property as stock or securities permitted to be received (or which would be permitted to be received if they were the sole consideration) without the recognition of gain.

cluding the transfer, and this it was entitled to do at its option. Revenue Act of 1928, sec. 141; Regulations 75, art. 13 (f). No revenue agent or other administrative officer could deprive the two corporations of that right. *Radiant Glass Co.* v. *Burnet* (App. D. C.), 54 Fed. (2d) 718, affirming 16 B. T. A. 610. And once the consolidated return issue is settled, the remainder of the prerequisites of section 761 is supplied by the regulations then in effect denying the recognition of gain or loss in such an "intercompany transaction" [3] and by the provisions of section 141 (a), *supra*, constituting the filing of a consolidated return a consent to their acceptance by the taxpayers. See *Charles Ilfeld Co.* v. *Hernandez*, 292 U. S. 62. The applicability of section 761 thus seems to us inescapable. Sec. 718 (d).[4]

The second phase of the controversy reduces in effect to the meaning of the phrase in section 761 (c) "a basis determined to be a cost basis" and its applicability to the assets acquired by petitioner.[5] The terms "cost basis" and "basis other than cost" are not defined in section 761, which is too extensive to set out here at length. But the legislative scheme appears to be to treat in separate classes the taxpayer's assets acquired through the ownership of shares for which its basis would be represented by what was paid for them, as opposed to other shares for which there would be an inherited, attributed, or substituted basis, typically one computed by reference to that of a transferor. See Maloney "Supplement C," 2 Tax Law Review 231 (Dec. 1946). On that approach there would seem no adequate reason for denying in this instance a "cost basis."

The omission in the statute is, moreover, supplied by the regulations. We note first that both subdivisions (1) and (2) of 761 (c) speak in terms of what is "determined" to be the basis. And section 761 (g), entitled "Determinations," provides for "Any determination which is

---

[3] ART. 37. [Regulations 75]. Dissolutions—Recognition of Gain or Loss.

(a) *During Consolidated Return Period.*

Gain or loss shall not be recognized upon a distribution during a consolidated return period, by a member of an affiliated group to another member of such group, in cancellation or redemption of all or any portion of its stock; and any such distribution shall be considered an intercompany transaction.

[4] (d) For special rules affecting computation of property paid in for stock in connection with certain exchanges and liquidations, see Supplement C.

[5] SEC. 761. * * *

* * * * * * *

(c) RULES FOR THE APPLICATION OF THIS SECTION.—

(1) STOCK HAVING COST BASIS.—The property received by a transferee in an intercorporate liquidation attributable to a share of stock having in the hands of the transferee a basis determined to be a cost basis, shall be considered to have, for the purposes of subsection (b), an adjusted basis at the time so received determined as follows:

* * * * * * *

(2) BASIS OF STOCK NOT A COST BASIS.—The property received by a transferee in an intercorporate liquidation attributable to a share of stock having in the hands of the transferee a basis determined to be a basis other than a cost basis shall, for the purposes of subsection (b), be considered to have, at the time of its receipt, the basis it would have had had the first sentence of section 113 (a) (15) been applicable.

required to be made under this section" to be "made in accordance with regulations * * *."

Regulations 112, section 35.761–3, deal with the present issue. They provide:

* * * Cost Basis or Basis Other Than Cost.—(a) *Cost Basis.*—In all cases other than those in which the basis of stock is determined to be a basis other than cost under (b) or (c) of this section, the basis of stock shall be determined to be a cost basis.

(b) *Basis Other Than Cost.*—Stock in any corporation shall be determined to have a basis other than cost if, as a result of the transaction in which such stock was acquired—

(1) The basis of such stock is fixed by reference to the basis of other property previously held by the acquiring corporation * * * or

(2) The basis of such stock is fixed by reference to its basis in the hands of a preceding owner * * *.

(c) Statutory Merger or Consolidation * * *.

The stipulation recites that, as to 2,680 shares of the transferor, petitioner's "aggregate cost" was $109,000. These shares clearly fall outside the exceptions described in the foregoing quotation. The remaining shares were acquired in exchange for petitioner's unissued stock. As to these, their cost would be arrived at by reference to petitioner's shares—*Estate of Isadore L. Myers*, 1 T. C. 100—not either "by reference to the basis of other property previously held" by petitioner nor "by reference to its basis in the hands of a preceding owner." The general rule is consequently applicable that "the basis of stock shall be determined to be a cost basis."

We can not, however, subscribe to the valuation placed by petitioner upon its shares for the purpose of arriving at cost. Granting that book values can be employed in the absence of more compelling evidence, *B. F. Edwards*, 39 B. T. A. 735, the best that can be made of this record is that prior to the transfer petitioner owned two-thirds of the stock of its transferor. All that it acquired by issuing 2,640 shares of its stock was the remaining one-third, having a book value of only about $191,500. On the theory that value may, in the absence of better evidence, be gauged by what is received for stock, *Estate of Isadore L. Myers*, *supra*, this would put the figure at only $72 a share, which under all the circumstances appears to be too low. On the other hand, adding to the pre-transfer book value of petitioner's assets—$1,637,-317.28—the $191,500 of assets received, and dividing by the 9,040 shares then outstanding, results in a value for petitioner's shares of about $200. Bearing in mind that prior sales and valuations had been made before the advent of the depression of 1930, of which we may take notice—*Safe Deposit & Trust Co. of Baltimore, Executor*, 35 B. T. A. 259, 263; affd. (C. C. A., 4th Cir.), 95 Fed. (2d) 806—this seems to us the most appropriate value to place on petitioner's stock, and we have so found.

Computations of petitioner's tax liability should be made by use of that figure multiplied by the 2,640 shares as the cost of one-third of the transferor's stock. For that purpose,

*Decision will be entered under Rule 50.*