JOHN SIMMONS COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17270.   Promulgated January 12, 1950.

John J. Thompson, Esq., for the petitioner.
John A. Mahoney, Esq., for the respondent.

OPINION.

OPPER, *Judge*: Whether the stock in question is considered to have a "cost basis" or a "basis other than cost" in computing the basis of assets for equity invested capital purposes of the excess profits tax under section 761, Internal Revenue Code,[1] is accepted by the parties as depending upon the nature of the transaction in which the stock was acquired. While the two terms are not defined, it may be said as a broad generalization that the purpose of section 761 is to provide for certain adjustments where the assets received on a liquidation are attributable to stock which, rather than being purchased, has a substituted or derivative basis. *North Jersey Quarry Co.*, 13 T. C. 194, 199.

The omission from the statute is moreover supplied by the regulations,[2] which, as we pointed out in *North Jersey Quarry Co.*, *supra*, are explicitly made the authority for "any determination which is required to be made under this section." Sec. 761 (g) (1). Those regulations provide that, except where "the basis of stock is determined to be a basis other than cost under (b) or (c) of this section, the basis of stock shall be determined to be a cost basis." The only exception apparently applicable and the one upon which petitioner relies calls for a basis other than cost:

* * * if as a result of *the transaction* in which such stock was acquired—
1. The basis of such stock is fixed by reference to the basis of other property previously held by the acquiring corporation * * *; or

---

[1] SEC. 761. * * *

* * * * * * *

(c) RULES FOR THE APPLICATION OF THIS SECTION.—
(1) STOCK HAVING COST BASIS.—The property received by a transferee in an intercorporate liquidation attributable to a share of stock having in the hands of the transferee a basis determined to be a cost basis, shall be considered to have, for the purposes of subsection (b), an adjusted basis at the time so received determined as follows:

* * * * * * *

(2) BASIS OF STOCK NOT A COST BASIS.—The property received by a transferee in an intercorporate liquidation attributable to a share of stock having in the hands of the transferee a basis determined to be a basis other than a cost basis shall, for the purposes of subsection (b), be considered to have, at the time of its receipt, the basis it would have had had the first sentence of section 113 (a) (15) been applicable.

[2] "The section, as amended by your committee, contemplates (as did the House bill) the application of the section under regulations which the Commissioner is directed to prescribe. Because of the variety of situations in which stock or property may be acquired, * * * the subsection contemplates rules on the following matters:

* * * * * * *

"(3) 'Basis and adjusted basis': The application of the terms 'cost basis' and 'basis other than a cost basis': * * *." (S. Rept. No. 1631, 77th Cong., 2d sess. (1942),

2. The basis of such stock is fixed by reference to its basis in the hands of a preceding owner * * *. [Regulations 112, sec. 35.761-3(b). Emphasis added.]

The essence of the present controversy is then to determine whether the "transaction" by which petitioner acquired the stock upon the exercise of options transferred to it in exchange for the issuance of its own securities was, on the one hand, the equivalent of a purchase for cash, or, on the other, an exchange partaking more of the nature of a tax-free transfer under section 112.

The fact that the options were transferred to petitioner and exercised by it in purchasing the stock is seized upon by petitioner as the foundation for its contention that the basis of the stock which petitioner purchased upon the exercise of the options could not be determined without including the option payments, *Realty Sales Co.*, 10 B. T. A. 1217, and hence that its basis for the stock is a derivative basis falling within the language, "the basis of such stock is fixed by reference to the basis of other property previously held by the acquiring corporation." Regulations 112, *supra*.

We are constrained to reject the contention as inconsistent with the fundamental principle peculiarly applicable in cases of this nature, that a transaction consisting of a series of steps may in the light of the circumstances, and particularly of the chronological relationship, be regarded as a single operation rather than as a number of disconnected ones. *Minnesota Tea Co.* v. *Helvering*, 302 U. S. 609; *Ashland Oil & Refining Co.* v. *Commissioner* (C. C. A., 6th Cir.) 99 Fed. (2d) 588; certiorari denied, 306 U. S. 661; *Prairie Oil & Gas Co.* v. *Motter*, (C. C. A., 10th Cir.), 66 Fed. (2d) 309. The phrase in the regulations, "the transaction in which such stock was acquired," should thus be interpreted consistently with that principle, leaving for examination in the light of the circumstances of each case whether the acquiring transaction, taken as a whole, falls within the excepting language so as to attribute a "basis other than cost."

Here the options were acquired on October 8 and 9; they expired October 15; petitioner was incorporated on October 13; the options having been exercised, the stock was transferred between October 20 and November 24; and the merger between petitioner and its then subsidiary took place on November 30. Thus, in a space of less than two months the entire operation resulting in the acquisition by petitioner of the assets of the New York corporation was instituted, carried on, and completed.[3] The options themselves evidence by their short duration that all parties intended the transaction to be brought to completion

---

[3] "The theory of these adjustments for liquidations [under section 761] is that the invested capital of the transferee after the liquidation should be the same as it would have been if the transferee had acquired the transferor's assets directly rather than by the indirect route of first acquiring the stock and then acquiring the assets in liquidation." Maloney, "Supplement C," 2 Tax L. Rev., 231, 244 (1947).

at once. The option payments, averaging little more than one cent a share for stock costing $20, were so insignificant as to be negligible. And even the transfer taxes claimed as a part of the cost of the options [4] were in reality attributable rather to the stock to which the options applied, sec. 1802 (b), I. R. C.; New York Tax Law, secs. 270, 270 (a), and in fact dispensed with further taxes when the stock itself was transferred. Regulations 71, sec. 113.36 (b); New York Tax Law, *ibid*. We conclude that there is a clear demonstration that everything that occurred was in reality a single transaction constituting a purchase, and that under these circumstances there is no justification for attributing to the stock of the New York corporation any basis other than its cost, considering the payment for the options, the transfer taxes, and the purchase price itself as all included in that figure.

Reviewed by the Court.

*Decision will be entered for the respondent.*

[4] The "cost" of the options was computed by adding to the purchase price, $135, the cost of transfer stamps, $673.28.