CALIFORNIA CASKET COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 30419. Promulgated October 15, 1952.

---

*Henry W. Howard, Esq.*, for the petitioner.
*Robert G. Harless, Esq.*, for the respondent.

OPINION.

VAN FOSSAN, *Judge:* This case presents three issues. The first involves petitioner's contention that the expenditure made by it during fiscal 1946 for structural and foundation work on the old warehouse which it was reconstructing into a modern plant, represents a repair expense and as such is currently deductible under section 23 (a), Inter-

nal Revenue Code.[1] Respondent has determined that such work was a part of an over-all plan of rehabilitation and permanent betterment of the entire building and that pursuant to section 24 (a) of the Code [2] the expense thereof is not so deductible.

Petitioner does not deny its intent to remodel the building completely into a modern operation. Nor does it seek to deduct, as repair expense, any of the costs of its original plan for such remodeling. It does contend, however, that, of the above total amount, that portion allocable to the restoration and replacement of the foundation piling, represents a repair expense separate and apart from the over-all project and, as such, is currently deductible. To support its contention, petitioner cites and relies upon *Midland Empire Packing Co.*, 14 T. C. 635, and *American Bemberg Corporation*, 10 T. C. 361.

We have closely studied the cases so cited by petitioner and have found them to be clearly distinguishable from the case before us. Both cases involved expenses incurred by taxpayers to permit them the continued normal operation of plants which had been used and occupied by them for some years. In neither case was the expenditure involved made to prepare initially a structure for the operation of a particular business. Nor was there present any intention to make such structure suitable for new or additional uses. The present case is different. Contrary to the above, the petitioner, in the instant proceeding, acquired the building in question with the express intention and purpose of completely renovating and altering it to conform to the specific requirements of petitioner's business.

Petitioner embarked upon a program to render the building suitable for occupancy by its business. This program necessarily included, as an integral part thereof, the making of any incidental repairs and replacements that were needed to achieve the desired end. It cannot be gainsaid that the work of restoring and reconstructing the foundation piling comes within the foregoing category, and was an incidental but important factor in making the building suitable for the occupancy of petitioner's business. Prior to the time that at least a portion of such work had been done, the building was unsuited for safe use and occupancy by any business. When reviewed in the proper perspective, the conclusion is inescapable that the work

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions :

(a) EXPENSES.—

(1) TRADE OR BUSINESS EXPENSES.—

(A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *.

[2] SEC. 24. ITEMS NOT DEDUCTIBLE.

(a) GENERAL RULE.—In computing net income no deduction shall in any case be allowed in respect of—

* * * * * * *

(2) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate ;

in question, although not within the original plan, became, when undertaken, incidental to and involved in the greater plan of over-all rehabilitation, remodeling and permanent improvement of the entire property. Thus, the amount expended therefor is properly to be capitalized rather than deducted currently as a separate repair expense. *Ethyl M. Cox*, 17 T. C. 1287; *Coca-Cola Bottling Works*, 19 B. T. A. 1055; *Home News Publishing Co.*, 18 B. T. A. 1008; *I. M. Cowell*, 18 B. T. A. 997. Respondent is, therefore, affirmed as to this issue. See *Driscoll* v. *Commissioner*, 147 F. 2d 493.

The next question is whether petitioner is entitled to carry over into its taxable year ended June 30, 1945, any of the unused excess profits credit of its merged component, Oregon.

Respondent has denied petitioner the privilege of using any of Oregon's foregoing unused excess profits credit as a carry-over into its taxable year ended June 30, 1945. As his reasons therefor respondent urges that the short 2 months' period between July 1 and August 31, 1944, constitutes a taxable year; that this short period represents Oregon's last taxable year; and that, therefore, petitioner's fiscal year ended June 30, 1945, is not a succeeding taxable year within the meaning of section 710 (c) (3) (B), Internal Revenue Code.[3]

Petitioner, on the other hand, cites and relies upon *Stanton Brewery, Inc.* v. *Commissioner*, 176 F. 2d 573, reversing 11 T. C. 310, as sole authority for its position that the "taxpayer" referred to in section 710 (c), *supra*, contemplates and includes the "corporation" into which a once wholly owned subsidiary having unused excess profits credit is absorbed as a result of statutory merger. It argues that to refuse petitioner the advantage of using the unused excess profits carry-over of Oregon is inconsistent with the position in which it finds itself as the legal heir to that subsidiary's liabilities, including

---

[3] SEC. 710. IMPOSITION OF TAX.

(c) UNUSED EXCESS PROFITS CREDIT ADJUSTMENT.—

\* \* \* \* \* \*

(3) Amount of unused, excess profits credit carry-back and carry-over.—

\* \* \* \* \* \*

(B) Unused Excess Profits Credit Carry-Over.—If for any taxable year beginning after December 31, 1939, the taxpayer has an unused excess profits credit, such unused excess profits credit shall be an unused excess profits credit carry-over for each of the two succeeding taxable years, except that the carry-over in the case of the second succeeding taxable year shall be the excess, if any, of the amount of such unused excess profits credit over the adjusted excess profits net income for the intervening taxable year computed for such intervening taxable year (i) by determining the unused excess profits credit adjustment without regard to such unused excess profits credit or to any unused excess profits credit carry-back, and (ii) without the deduction of the specific exemption provided in subsection (b), (1). For the purposes of the preceding sentence, the unused excess profits credit for any taxable year beginning after December 31, 1941, shall first be reduced by the sum of the adjusted excess profits net income for each of the two preceding taxable years (computed for each such preceding taxable year (i) by determining the unused excess profits credit adjustment without regard to such unused excess profits credit or to the unused excess profits credit for the succeeding taxable year, and (ii) without the deduction of the specific exemption provided in subsection (b) (1)).

those for income and excess profits taxes; and, further, that such refusal operates to defeat the scheme of equitable relief incorporated into the statute in the form of excess profits credit carry-overs and carry-backs.

With all respect for the Court of Appeals, which reversed us in the *Stanton* case, Chief Judge Learned Hand dissenting, we feel constrained to adhere to the position taken in our decision in that case. Accordingly, we sustain respondent in his denial to petitioner of the privilege of carrying over any part of Oregon's unused excess profits credit into its own taxable year ended June 30, 1945.

The final issues involve the proper computation and application of the "plus adjustment" to equity invested capital to which petitioner became entitled as a result of the statutory merger with it of the subsidiary corporations on August 31, 1944.

Respondent has determined that the stock held by petitioner in its subsidiary corporations had a cost basis within the meaning of section 761 of the Code. Accordingly, he has computed the "plus adjustment" under section 761 (d) (1), Internal Revenue Code,[4] in the amount of $846,594.31, such adjustment to be reflected in petitioner's accumulated earnings and profits as of July 1, 1945.

On brief, petitioner acquiesces in the determination of respondent in so far as it relates to the cost basis of the stock of Los Angeles and Pacific in its hands immediately prior to the intercorporate liquidation thereof. Petitioner assigns as error respondent's determination of a cost basis for the stock in Oregon held by it at that time. It argues that such stock had a "basis other than a cost basis" and that the "plus adjustment" relative thereto should be computed under section 761 (d) (2) of the Code.[5]

---

[4] SEC. 761. INVESTED CAPITAL ADJUSTMENT AT THE TIME OF TAX-FREE INTER-CORPORATE LIQUIDATIONS.

(d) ADJUSTMENT OF EQUITY INVESTED CAPITAL.—If property is received by the transferee in an intercorporate liquidation, in computing the equity invested capital of the transferee for any day following the completion of such intercorporate liquidation—

(1) with respect to any share of stock in the transferor having in the hands of the transferee, immediately prior to the receipt of any property in such intercorporate liquidation, a basis determined to be a cost basis, the earnings and profits or deficit in earnings and profits of the transferee shall be computed as if on the day following the completion of such intercorporate liquidation the transferee had realized a recognized gain equal to the amount of the plus adjustment in respect of such share, or had sustained a recognized loss equal to the amount of the minus adjustment in respect of such share;

[5] SEC. 761. INVESTED CAPITAL ADJUSTMENT AT THE TIME OF TAX-FREE INTER-CORPORATE LIQUIDATIONS.

(d) ADJUSTMENT OF EQUITY INVESTED CAPITAL.—If property is received by the transferee in an intercorporate liquidation, in computing the equity invested capital of the transferee for any day following the completion of such intercorporate liquidation—

\*　　\*　　\*　　\*　　\*　　\*　　\*

(2) with respect to any share of stock in the transferor having in the hands of the transferee, immediately prior to the receipt of any property in such intercorporate liquidation, a basis determined to be a basis other than a cost basis, there shall be treated as an amount includible in the sum specified in section 718 (a) the amount of the plus adjustment with respect to such share, \*　\*　\*

The section here to be construed was added to the Code by the Revenue Act of 1942. The Senate Finance Committee Report No. 1631, 77th Cong., 2d Sess., issued incident thereto, reads in pertinent part, as follows:

### Section 761.

The amendment made by your committee in section 761 makes numerous technical changes in section 761 of the House bill, and provides certain basic rules for the computation of the adjustment to invested capital.

Under section 718 (a) (5) and (b) (4) of existing law, an adjustment is made in equity invested capital in the case of property received by a taxpayer in a complete liquidation under section 112 (b) (6) (other than one to which the provisions of the second sentence of section 113 (a) (15) are applicable) in order to reflect in the invested capital the adjusted basis of the property so received. Section 761 of the House bill makes (in terms of equity invested capital) substantially the same adjustment, but only in certain cases. Typical of such cases is the case of property so received with respect to stock of the liquidated corporation having a substituted basis in the hands of the taxpayer by reason of having been acquired by the taxpayer from individual shareholders in exchange for its own stock in a transaction described in section 112 (g) (1) (B) or the corresponding provision of the prior law. Section 761, as amended by your committee, makes (in terms of adjusted basis) substantially the same adjustment in such cases as is made under existing law.

In other cases (typical of which is the case of property so received with respect to stock acquired by the taxpayer in a cash purchase) section 761 of the House bill changes existing law by providing that a very different adjustment in equity invested capital is to be made; namely, (1) the adjusted basis of the property of the liquidated corporation is to be changed as of the time of the acquisition of control of such corporation by the taxpayer so as to reflect in the adjusted basis of such property at such time the price paid for the stock, (2) a recomputation is to be made (using such changed adjusted basis) of the earnings or profits (or deficit in earnings or profits) of the liquidated corporation attributable to such stock, for the period beginning with the acquisition of control by the taxpayer and ending with the liquidation, and (3) after certain technical adjustments, the amount resulting from the recomputation under (2) is to be treated as an increase or decrease in the earnings and profits of the taxpayer. Section 761, as amended by your committee, makes (in terms of adjusted basis) substantially the same adjustment in such cases.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

The above report has appended thereto examples illustrating the proper application of the two subsections here in dispute. One such example reads, in part, as follows:

\* \* \* Corporation P, which owns 5 shares of $100 par value of stock of Corporation S acquired at a cost of $600 in cash, exchanges shares of its own stock for the remaining 95 shares of stock of Corporation S. The latter stock takes a substituted basis (a basis other than a cost basis) of $110 per share in the hands of Corporation P.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Corporation P liquidates Corporation S under the provisions of section 112 (b) (6) of the Internal Revenue Code (an intercorporate liquidation under section 761 (a) (1)).

In determining the plus or minus adjustment to the invested capital of Corporation P, it is necessary to make two computations, in view of the special rule contained in section 761 (c), for determining the adjusted basis of property applicable to the shares of stock having a "cost basis."

Two illustrative computations dealing, first, with the adjustment pertaining to those stock shares having a "basis other than a cost basis"; and, secondly, that pertaining to those stock shares having a "cost basis" are then set forth. In the example provided, the computations in each instance showed a "minus adjustment" necessary. With respect thereto, the report continues, as follows:

Under the provisions of section 761 (d) (1) the above "minus adjustment" * * * applicable to stock having a cost basis constitutes a reduction of the earnings and profits account of the parent upon liquidation of the subsidiary— whereas the "minus adjustment" * * * pertaining to those shares having a substituted basis constitutes an amount "includible in the sum specified in 718 (b)" (section 761 (d) (2)).

Thus, for the purposes of determining the adjustment provided in section 761, the statute contemplates that the shares for which property is received in an intercorporate liquidation be treated in two separate classes. One such class includes those shares having a basis other than a cost basis, i. e.. a substituted basis, by reason of having previously been acquired by taxpayer prior to 1913 and solely in exchange for its own shares in a tax free transaction such as is described in section 112 (g) (1) (B). The adjustment with respect thereto is to be computed under section 761 (d) (2), and constitutes an amount includible in equity invested capital "* * * in the sum specified in section 718 (a) * * *." Contrasted is the adjustment to be made with respect to those shares, the basis of which would be represented by what was paid for them. Typical of such shares are those acquired by the taxpayer in a cash purchase. Here a very different adjustment is made in that the amount thereof, computed under section 761 (d) (1), effects an increase or decrease in the earnings and profits account of the taxpayer. See Maloney, "Supplement C," 2 Tax Law Review 231 (December 1946).

While the terms "cost basis" and "basis other than a cost basis" are not specifically defined in the statute, the omission has been supplied by the promulgation of definitive regulations under the authority contained in section 761 (g) (1) that "* * * Any determination which is required to be made under this section * * * shall be made in accordance with regulations which shall be prescribed by the Commissioner with the approval of the Secretary * * *." In this connection, Regulations 112, section 35.761–3, provides, in pertinent part, as follows:

DETERMINATION OF BASIS OF STOCK—COST BASIS OR BASIS OTHER THAN COST.—
(a) *Cost basis.*—In all cases other than those in which the basis of stock is determined to be a basis other than cost under (b) or (c) of this section, the basis of stock shall be determined to be a cost basis.

(b) *Basis other than cost.*—Stock in any corporation shall be determined to have a basis other than cost if, as a result of the transaction in which such stock was acquired—

(1) The basis of such stock is fixed by reference to the basis of other property previously held by the acquiring corporation, * * *; or

(2) The basis of such stock is fixed by reference to its basis in the hands of a preceding owner * * *

\*         \*         \*         \*         \*         \*         \*

Thus, in determining whether petitioner's Oregon stock was held with a "cost basis" or a "basis other than cost" recourse must be had to the 1891 transaction by which the stock was acquired. The ultimate question then to be considered is whether such transaction "* * * was, on the one hand, the equivalent of a purchase for cash, or, on the other, an exchange partaking more of the nature of a tax-free transfer under section 112." See *John Simmons Co.*, 14 T. C. 29, 32.

The petitioner, we find, acquired the entire 500 shares of the outstanding capital stock of Oregon in 1891 from individual stockholders thereof in exchange solely for 750 shares of its own capital stock. This acquisition appears to have been made in what would nowadays be classified as a tax free transaction of the type described in section 112 (g) (1) (B).

We are of the opinion, therefore, that the Oregon stock, so acquired by petitioner, takes as its basis in petitioner's hands a substituted basis, or a basis other than a cost basis, within the meaning of section 761, and was so held by it immediately preceding the intercorporate liquidation, as the result of which it received all the property and assets of that corporation. In arriving at such conclusion, we do not believe that we are in conflict with our holding in *North Jersey Quarry Co.*, 13 T. C. 194. None of the stock there in controversy had been acquired by the taxpayer in transactions of the type described in section 112 (g) (1) (B), or elsewhere in the Code, as tax free. Rather, 67 per cent of the stock of the subsidiary corporation involved had been purchased by the taxpayer at an aggregate cost of $109,000. The remaining 33 per cent thereof was acquired in a subsequent transaction in consideration of certain theretofore unissued shares of the taxpayer's stock, which stock was found to have a value at that time of $200 per share. It was there held that the stock of the subsidiary thus acquired had a "cost basis" under Supplement C, arrived at in part by valuation of the taxpayer's stock given in exchange therefor. As heretofore noted, such is not the case here. Accordingly, respondent's determination, in so far as it relates to the adjustment to be made with respect to the Oregon shares owned by petitioner, is reversed.

There remains for consideration the argument advanced by petitioner regarding the effective date of the adjustments computed in connection with the shares held directly or indirectly by it in its subsidiaries, Los Angeles and Pacific, immediately prior to the intercorporate liquidation thereof. Petitioner has conceded that such had a "cost basis" in its hands at that time and that the "plus adjustment" with respect thereto was properly computed by respondent under section 761 (d) (1). Nevertheless, petitioner contends that the application of section 761 (d) (1) is not controlled by the limitations of section 718 (a) (4); that, to the contrary, the statute plainly contemplates an adjustment so computed to equity invested capital as of the date following an intercorporate liquidation; and that any other construction thereof does violence to the statutory scheme and could not have been intended by Congress. We do not agree.

The statute in question provides that the adjustment computed thereunder is to be used in computing the earnings and profits of the taxpayer as if on the day following the intercorporate liquidation such taxpayer had realized a recognizable gain or loss in the amount thereof. Sec. 761 (d) (1), *supra*. Gains and losses which are so recognized in computing earnings and profits are included in equity invested capital under section 718 (a) (4), (see Maloney, *supra*), which section provides for only such inclusion of accumulated earnings and profits as of the beginning of a taxable year. Sec. 718 (a) (4), Internal Revenue Code.

The legislative history of section 761, moreover, supports the statutory construction sought by respondent. In its reports attendant upon the deliberations preceding enactment of the statute, Congress repeatedly reiterated that the adjustment computed under section 761 (d) (2) is to effect an increase or decrease in the earnings and profits account of the taxpayer involved. S. Rept. No. 1631, *supra;* H. Repts. No. 2333 and No. 2586, 77th Cong., 2d Sess. That the term "earnings and profits" referred to so repeatedly means those of the current year cannot be doubted. Had Congress intended otherwise, the adjustment provided would have been made applicable to "accumulated earnings and profits." By its failure to use this latter term more than once in connection with those accumulated earnings and profits of the merged subsidiary attributable to the stock thereof, see H. Rept. No. 2333, *supra*, Congress left no doubt as to its intentions.

Respondent's determination in so far as it relates to the adjustment with respect to the Los Angeles and Pacific stock involved is approved.

Reviewed by the Court.

*Decision will be entered under Rule 50.*