## H. B. SNIVELY, H. B. SNIVELY, TRANSFEREE, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 24533, 25807. Promulgated February 11, 1953.

*Robert L. Staufer, Esq., William R. Frazier, Esq.,* and *James P. Hill, Esq.,* for the petitioner.

*Newman A. Townsend, Jr., Esq.,* for the respondent.

## OPINION.

TIETJENS, *Judge:* The petitioner, with the primary purpose of acquiring a citrus grove, purchased the stock of Meloso and immediately set about its liquidation in order to achieve that purpose. In the period of about six months between the stock purchase and formal dissolution of the corporation the citrus crop matured. The bulk of

this crop was treated by the petitioner as his own and it was harvested and sold pursuant to his direction for his own account. He reported the net proceeds of the sale as his individual income for 1943. The respondent, on the one hand, has adjusted the petitioner's individual income for that year by eliminating therefrom the proceeds of the fruit sale and, on the other hand, has determined that the $40,683.75 which the fruit brought should be added to Meloso's 1943 gross income, thus bringing about the deficiencies in declared value· excess-profits tax and excess profits tax which are in contest.

The parties have presented several theories, some in the alternative, on which the question of who should be taxable with the fruit proceeds could be decided, and we have carefully studied them all. By amended answer the respondent justifies his action in taxing the proceeds to Meloso either as an exercise of the authority conferred on him by section 45 [1] or under the broad provisions of section 22 (a),[2] Internal Revenue Code.

We think the income attributable to the sale of the fruit should be taxed as proposed by the respondent and we approve his action in this respect. There is no doubt that the petitioner owned all of Meloso's stock in the fall of 1943 when the fruit was harvested and thus was in control of the corporation's business. Nor is there any doubt that the fruit on the trees represented potential or unrealized income of Meloso. See and compare *United States* v. *Lynch* (C. A. 9), 192 F. 2d 718; *Floyd* v. *Scofield* (C. A. 5), 193 F. 2d 594; *Commissioner* v. *First State Bank* (C. A. 5), 168 F. 2d 1004; *Helvering* v. *Horst*, 311 U. S. 112. As far as we can determine from the record, all of the expenses of cultivating the grove and maintaining the trees during the growing season were borne by Meloso and title to the grove and the fruit at the time of harvest was in the corporation. No corporate action to distribute the fruit to the petitioner had been taken, and even if it had, the principle of the above cited cases would still tax the proceeds of the sale to Meloso. It would thus seem fair and proper that the income arising from sale of the fruit be attributed to Meloso, if for no other reason

---

[1] SEC. 45. ALLOCATION OF INCOME AND DEDUCTIONS.

In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Commissioner is authorized to distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.

[2] SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *

than, in the words of section 45, "clearly to reflect the income" of Meloso. We think the income was in fact Meloso's and that Meloso's imminent liquidation should not affect the tax consequences of the realization of that income. See *Floyd* v. *Scofield, supra,* where the proceeds of a liquidating dividend of accounts receivable, collected after liquidation, were held taxable to the corporation in liquidation rather than to the stockholder who had received the accounts as a dividend. Discussion of the applicability of section 45 is unnecessary. We hold the income was that of Meloso and so is taxable under section 22 (a).

The petitioner argues, in effect, that his purchase of the stock and the succeeding moves to liquidate Meloso in some way incapacitated Meloso from earning, receiving, or being taxable with income from and after the date of the stock purchase. His main reliance is on *Commissioner* v. *Ashland Oil & R. Co.* (C. A. 6), 99 F. 2d 588, certiorari denied 306 U. S. 661. We do not understand that case, which will be discussed later, to stand for such a proposition and find no merit in this argument. The stock purchase coupled with the intent to dissolve the corporation and the taking of some steps to that end, in our opinion did not *ipso facto* either destroy the existence of the corporation as a taxable entity or permit the petitioner to appropriate as his own income which would otherwise be taxable to the corporation.

This does not dispose of the matter, for the petitioner contends further that neither he nor Meloso, both being on a cash basis, received cash either actually or constructively from the fruit in 1943, the year in which the respondent determined the income was received. Respondent's determination is presumptively correct and the burden of establishing otherwise is on the petitioner. In our opinion this burden has not been met. Petitioner who was in a better position to know the facts than anyone else reported this income on his individual re turn as having been received in 1943. He was the president and a substantial shareholder in Lake Hamilton Cooperative to which he turned over the harvesting and sale of the fruit in 1943. There is no affirmative proof that the fruit was not sold before the end of that year and the reasonable inference is that it was. The petitioner's own books contain a journal entry as of December 31, 1943, indicating that he had control of the fruit proceeds as of that date. On the record we hold that the presumptive correctness of the respondent's determination has not been overcome.

The petitioner also makes an argument with regard to the item of $14,978.19 which represented the proceeds of fruit sold earlier through Great Southern Fruit Co. This item was reported in 1943 as income by Meloso, an action which the petitioner now says was a mistake. We have doubt that the $14,978.19 item is properly in issue on the plead-

ings, but if it is, what we have said above about the proceeds of subsequent sales is equally applicable, and we hold that both the $40,683.75 and $14,978.19 items were properly treated by the respondent as income of Meloso in 1943.

We turn to the problems of the petitioner's individual income tax for 1943. The respondent has adjusted the petitioner's income for that year to eliminate the net proceeds of $11,152.75 from the controversial fruit sale which he reported. This adjustment is approved in view of our holding that the income from the fruit sales is taxable to Meloso.

That leaves us with the question of whether or not the liquidation of Meloso was a taxable transaction, and if so, the amount of the petitioner's gain therefrom. On his 1943 return the petitioner treated the transaction as taxable and reported a long-term capital gain. He now contends this treatment was erroneous and argues that on the authority of *Commissioner* v. *Ashland Oil & R. Co.*, *supra*, his purchase of the stock and the liquidation and dissolution of Meloso are to be taken as a single transaction, the substance of which was the acquisition of the Meloso grove. We think this argument is well taken. At the risk of over-simplification, the *Ashland Oil* case involved a taxpayer who was forced to purchase the stock of a corporation in order to reach the primary objective of acquiring the corporate property through liquidation and dissolution. That is essentially the same situation facing us here. The court concluded that the two steps—the stock purchase and the liquidation—were to be taken as a single transaction despite their separation in time by a considerable period. The question was whether the taxpayer realized a gain on liquidation. It was held that though the transaction was, in form, a purchase of stock, in substance, it was a purchase of property and that since the taxpayer still held the property, no taxable gain was realized on the liquidation.

This Court has approved and utilized the principle of the *Ashland Oil* case in varying situations, sometimes to the advantage of the taxpayer and sometimes to his disadvantage. We think the principle can properly be applied here. See *Koppers Coal Co.*, 6 T. C. 1209; *Kimbell-Diamond Milling Co.*, 14 T. C. 74, affd. 187 F. 2d 718, certiorari denied 342 U. S. 827; *Ruth M. Cullen*, 14 T. C. 368; *John Simmons Co.*, 14 T. C. 29; *Western Wine & Liquor Co.*, 18 T. C. 1090.

Against its application the respondent argues that the Meloso stock was purchased in July 1943, that the corporation was not finally dissolved until the following December, and that in the interim Meloso continued to carry on its corporate business as before. However, a somewhat similar fact situation existed in the *Ashland* case, the corporation whose stock was purchased there continuing in opera-

tion for almost a year before final dissolution. Here, the dissolution proceeded with reasonable speed. A petition to dissolve was presented to the court even before the stock changed hands. The petitioner's intention right along was to dissolve. The fact that final dissolution did not occur until December 1943 is not controlling. The various conveyances and loans were made simply to facilitate the stock purchase and the orderly winding up of the corporate affairs. This Court has said that the length of time consumed is not fatal to a determination that the corporation was in process of complete liquidation. *Estate of Charles Fearon*, 16 T. C. 385. This case is not distinguishable from *Ashland Oil* on that ground.

At the end of 1943, the crucial year, the citrus grove which the petitioner had acquired through his purchase of the Meloso stock was still in his hands and under the *Ashland Oil* case, "no taxable gain has been realized." This makes it unnecessary to go into the question of the amount of gain.

It has been stipulated that the petitioner is personally liable for any deficiencies that may be determined in declared value excess-profits tax and excess profits tax. Adjustments not treated above have been agreed on.

*Decisions will be entered under Rule 50.*