Lillian M. McDonough v. Commissioner. Eugene B. McDonough v. Commissioner. Eugene B. McDonough and Lillian M. McDonough v. Commissioner.
McDonough v. Commissioner
Docket Nos. 55428-55430.
United States Tax Court
T.C. Memo 1956-215; 1956 Tax Ct. Memo LEXIS 79; 15 T.C.M. (CCH) 1127; T.C.M. (RIA) 56215; September 21, 1956
*79 James S. Delehanty, Esq., Pioneer Building, St. Paul, Minn., for the petitioners. Ivan L. Onnen, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: These consolidated proceedings involve deficiencies in income taxes determined as follows: Calendar
Year
Taxpayer
Deficiency
1946
Lillian M. McDonough
$1,120.45
1946
Eugene B. McDonough
1,646.85
1948
Eugene B. & Lillian M.
McDonough
9.40
1949
Eugene B. & Lillian M.
McDonough
274.28
1950
Eugene B. & Lillian M.
McDonough
1,462.82 The only issues to be decided are whether an amount paid by a partnership in connection with remodeling a building is a capital expenditure rather than a repair expense, and whether profit realized by petitioners on the sale of real estate is taxable as ordinary income rather than as long-term capital gain. Findings of Fact Some of the facts have been stipulated and are hereby found. Petitioners Eugene B. and Lillian M. McDonough are husband and wife and reside in St. Paul, Minnesota. They filed separate income tax returns for 1946 and joint income tax returns for 1948, 1949 and 1950 with the collector of internal *80 revenue for the district of Minnesota. Eugene McDonough, hereafter sometimes referred to as petitioner, is, and was during the period here involved, a surveyor and engineer. The McDonough Amusement Company was organized as a partnership in 1940. Its principal activity was the operation of a bingo game in West St. Paul, Minnesota. It filed partnership income tax returns for each of the calendar years here involved with the collector of internal revenue for the district of Minnesota. For 1946 and 1948 each petitioner received one-sixth and for 1949 and 1950 they together received five-sixths of the net profits of the partnership, after the payment of specified salaries to petitioners. On May 8, 1946, the partnership leased certain property in West St. Paul for a period of 5 years with an option to renew for two additional 5-year periods. Thereafter, and during 1946, it expended $22,580.49 in connection with remodeling the building on the property. Of this amount the partnership deducted $10,056.25 as repair expense on its 1946 tax return, $10,003.05 of which was disallowed by respondent as repair expense but treated as an amortizable capital expenditure. The building on the leased *81 premises, formerly a bowling alley, was in very bad shape and had not been used for several years prior to being leased by the partnership. The partnership employed a general contractor and a plumbing contractor, both on a cost-plus basis, to remodel the building and make it suitable for the operation of bingo games. Work was performed on all parts of the building and included the installation of washrooms, heating and air conditioning equipment, and a completely new floor when, after the bowling alleys were taken out, it was discovered that the structure underneath was rotted, and rather than lay a floor over the old alleys as originally planned it was necessary to replace the floor and repair some basement walls and shore up part of the building. During the period of remodeling the partnership operated bingo games in the building 2 afternoons and 3 nights each week, and temporary staging was erected over portions of the floor as necessary to permit operation of the bingo games as regularly scheduled. Operation of the bingo games did not, however, interfere in any way with the work performed by the plumbing contractor, and all work done by him was in connection with the installation *82 of washrooms and heating and air conditioning equipment. The deduction of repair expense represents an amount arrived at by the partnership's bookkeepers and auditors from an estimate by the general contractor as to the proportion of the total cost of remodeling which constituted permanent improvements. The general contractor classified the cost of tearing out the old floor and replacing it with a complete new floor as a repair. All of the $10,003.05 claimed as a repair expense and disallowed by respondent was expended for capital improvements. In late 1944 or early 1945 petitioner advanced to Den E. Lane, a licensed real estate dealer in St. Paul, approximately $15,000 which was used to buy and develop real estate in St. Paul known as Lane's Edgcumbe Hills. In return for this money, petitioners received an interest in the profits from the sale of the property and petitioner's surveying firm received the surveying and engineering awards in the development of the property. His firm completed the survey and subdivision work in 1945 and was paid for its services. Thereafter certain lots were designated from which petitioners were to receive the profits, it being agreed that petitioners *83 would receive the proceeds from the sale of such lots, less a 20 per cent commission to be paid to Lane and less expenses incurred in connection with the sales of such lots. Legal title to these designated lots was held by Lane. None of the property was at any time held for rental purposes, "For Sale" signs were posted on the property, it was repeatedly advertised for sale in St. Paul newspapers, and advertising brochures were used extensively. Three lots were sold in 1945. Six lots were sold in 1946, from which petitioner realized a gain of $4,182.84, and his wife realized a gain of $4,182.85. Three lots were sold in 1949, from which petitioners realized a gain of $3,906.18, and four lots and a portion of a fifth lot were sold in 1950, from which they realized a gain of $6,941.40. The cost basis used by petitioners in determining the gains reported in their returns included an aliquot part of the amount originally advanced to Lane. During 1946 and 1947 petitioner made two sales of residential property, neither of which was his personal residence. He was also president and, along with Lane and Gilbert Ham, a building contractor, a stockholder in Northwest Homes, Inc., a corporation *84 formed for the purpose of acquiring three parcels of land upon which basements had been completed. The corporation erected three double houses on the existing foundations, two of which were sold, and also acquired title to eight lots on which it erected smaller homes for sale. After the two double houses and eight homes were sold, the corporation was liquidated. The corporation performed no functions other than the erection and sale of these double houses and eight homes. The lots from which petitioners realized gains in 1946, 1949 and 1950 were held primarily for sale to customers in the ordinary course of business Opinion Although petitioners have filed no brief and we have accordingly in the main followed respondent's requests in our findings of fact, Rule 35(e)(3), Tax Court Rules of Practice; and for similar reasons we are unable to decipher the principal thrust of petitioners' legal contention; nevertheless we might under the doctrine of Cohan [1] have made some small allowance for the temporary facilities constructed to permit the continuance of business during reconstruction, see Robert Buedingen, 6 B.T.A. 335, while sustaining on the whole respondent's disallowance *85 of "repair" items as being actually capital expense. I. M. Cowell, 18 B.T.A. 997; Home News Publishing Co., 18 B.T.A. 1008; California Casket Co., 19 T.C. 32. The difficulty is that respondent has not disallowed the whole amount and for all that appears the deduction permitted, small as it is, might be enough to cover all that is allowable. See Neils Schultz, 44 B.T.A. 146. On the first issue respondent is sustained. Joseph Merrick Jones, 24 T.C. 563. As to the remaining controversy, all the evidence points to the conclusion that the lots of which petitioners were the equitable owners were held primarily for sale and we have so found. The property was subdivided and actively advertised. Sales were frequent and had a definite continuity. And that the activity was carried on by others for petitioners' benefit cannot of itself efface the business character of the operation. Welch v. Solomon, (C.A. 9) 99 Fed. (2d) 41. Whether the relationship was a joint venture, an agency, or a trust, the income was petitioners' and its character was *86 determined by the activity itself. J. Roland Brady, 25 T.C. 682; Florence H. Ehrman, 41 B.T.A. 652, affd. (C.A. 9) 120 Fed. (2d) 607, certiorari denied 314 U.S. 668; Welch v. Solomon, supra.The gains in question were ordinary income. Decisions will be entered for the respondent. Footnotes
1. Cohan v. Commissioner, (C.A. 2) 39 Fed. (2d) 540↩.