Alexander L. Allen v. Commissioner.
Allen v. Commissioner
Docket No. 42858.
United States Tax Court
T.C. Memo 1956-88; 1956 Tax Ct. Memo LEXIS 205; 15 T.C.M. (CCH) 464; T.C.M. (RIA) 56088; April 17, 1956
*205 1. Petitioner's gross receipts determined by the bank deposit method. 2. Petitioner purchased three buildings in Chattanooga, Tennessee, to be used in his practice. Two of the buildings at 522 and 909 Vine Street required extensive remodeling and replacements to render them suitable for petitioner's purpose. The building at 502 Forrest Avenue was already being used as a clinic when acquired by petitioner and required only incidental repairs. During 1947, petitioner spent about $22,000 in rehabilitating and improving the three buildings, and claimed part of the aggregate cost thereof as an ordinary and necessary business expense. Held, that all of the work done on the Vine Street properties was part of an over-all plan of permanent betterment increasing the usefulness and the life of such buildings, and no part of the expense thereof is deductible as repair expense. Held further, that part of the cost of work done on 502 Forrest Avenue to keep the premises in an ordinarily efficient, operating condition is deductible as repair expense, but that expenditures for other work on said building are disallowed as deductions, in part, because capital in nature and, in part, because of failure *206 to meet the burden of proving that such expenditures were for repairs. 3. Deduction allowed for salaries paid in addition to amount deducted on income tax return. 4. In 1947, petitioner sold his office premises in Cincinnati, Ohio, which he occupied under a lease-purchase agreement, and claimed a deduction for an alleged loss on the sale of such property. Held, that petitioner realized neither gain nor loss for the year 1947. K. Harlan Dodson, Jr., Esq., for the petitioner. Frederick T. Carney, Esq., and J. Frost Walker, Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion Respondent determined a deficiency in petitioner's income tax for the calendar year 1947 in the amount of $4,975.98. The determination was based upon the bank deposit method, *207 gross receipts being determined on the basis of deposits in a bank in Chattanooga, Tennessee. At the hearing, it developed that petitioner also had a bank account in Cincinnati, Ohio. Respondent filed an amended answer under section 272(e) of the Internal Revenue Code of 1939, claiming an increased deficiency in the amount of $6,469.87, based upon deposits in the Cincinnati bank. Petitioner filed a motion to strike that part of respondent's answer relating to the claim for an increased deficiency. We denied the motion, but granted petitioner 60 days to file a further motion to reopen the proceedings to permit him to take testimony relating to the increased deficiency. No motion to reopen was filed. The issues before us are: (1) to determine the correct amount of petitioner's gross receipts for 1947 by the bank deposit method; (2) whether certain business expenditures were ordinary and necessary expenses or capital in nature; (3) whether certain salaries were paid to employees in 1947 in addition to the amount deducted as payroll expense in petitioner's return, and (4) what amount of gain or loss resulted from the sale by petitioner of certain real property located in Cincinnati, *208 Ohio. Findings of Fact Some of the facts were stipulated, and, to the extent so stipulated, are included herein by this reference. Alexander L. Allen, hereinafter sometimes referred to as the petitioner, during the taxable year 1947 was a resident of Chattanooga, Tennessee, and filed his individual Federal income tax return for 1947 with the collector of internal revenue for the district of Tennessee. The petitioner is a naturopath and physiotherapist who has practiced as such for about 50 years. He practiced in Cincinnati, Ohio, before moving to Chattanooga, Tennessee, early in 1947. Near the end of 1947, petitioner was enjoined by authorities of the State of Tennessee from practicing any branch of the healing arts in Tennessee, and he is now located in Rossville, Georgia, just across the State line from Chattanooga, Tennessee. In his income tax return for 1947, petitioner reported gross receipts of $25,452. During the year in question, petitioner deposited $44,033.60 in his account with the Hamilton National Bank in Chattanooga, Tennessee, (hereinafter sometimes referred to as the Chattanooga bank). During the same year, petitioner deposited $12,034.36 in his account with *209 the Columbia Bank and Trust Co., Cincinnati, Ohio, (hereinafter referred to as the Cincinnati bank). The parties have stipulated, inter alia, that during the taxable year in question the petitioner borrowed $5,050 from his sister Lydia DeWitt and deposited said amount in his bank account in the Hamilton National Bank, Chattanooga, Tennessee; that he borrowed $1,750 from Nancy B. Gerrish and deposited in his Chattanooga bank account $1,200 of said amount; that checks totaling $1,540 received from Dr. Peter Wehner were deposited in said bank account and were later charged back to such account by the bank upon nonpayment; and that the amount of the deposits referred to in this paragraph, totaling $7,790, should be eliminated from petitioner's deposits in the Chattanooga bank and from gross income as determined by respondent in the statutory notice of deficiency. Respondent, on brief, also conceded that petitioner's income as determined should be further reduced by the amount of $5,000 which was withdrawn from petitioner's account in the Cincinnati bank and redeposited in the Chattanooga bank. The sum of $175 deposited on May 31, 1947, in petitioner's bank account in Chattanooga *210 represented the proceeds of the sale of a neon sign owned by petitioner for more than six months prior to such sale. The adjusted basis for such sign was not established. We find as an ultimate fact that $1000 of the deposits made in the Chattanooga bank account in 1947 represented checks cashed for patients and workmen, and said amount is not includible in gross receipts for the purpose of determining petitioner's income. While practicing in Cincinnati, Ohio, petitioner occupied two buildings, one of which was a three-story structure located at 110 East Eighth Street. The building was used as an office and for the treatment of patients. On May 12, 1944, petitioner entered into a lease-purchase agreement for the purchase of said property. The agreement provided, among other things, that petitioner was to pay to the seller $21,000 with 5 1/2 per cent interest in 120 equal monthly payments of $228.06; that after all payments had been made the lessor would deliver a general warranty deed to the lessee; and that the lessee had the right to assign the lease or sublet the premises without himself being released. On December 26, 1946, the petitioner entered into a contract with Dr. *211 Peter Wehner for the sale of his interest in the 110 East Eighth Street property. The pertinent provisions of the sales contract are as follows: "Whereas Alexander L. Allen is the owner of a lease with privilege of purchase on the premises known as 110 East Eight Str., Cincinnati, O. * * * on which 32 monthly payments have been made in accordance with its terms, and * * *
"Whereas Dr. Peter Wehner desires to acquire said lease and property, therefor I Peter Wehner hereby agree to purchase said lease, assuming all of the terms, conditions, and obligations of said lease, paying to Alexander L. Allen a total purchase price of $32,000.00 plus 5 1/2 per cent interest on unpaid balances as follow: A. Wheras [Whereas] Alexander L. Allen is indebted to Dr. Peter Wehner in the sum of $950.00 for services rendered by the said Peter Wehner Alexander L. Allen is hereby given a receipt in full for this $950.00 indebtednes [indebtedness] and paid an additional sum of Fifty Dollars in cash making a total of $1,000.00 to be credited on the purchase price. B. Dr. Peter Wehner agrees to pay Alexander L. Allen, as soon as possible but not later than January 25th 1947 another payment of *212 $1,000.00 and $1,000 on the 25th day of June, September & December 1947, together with interest at the rate of 5 1/2% * * *
"It is further agreed that if Alexander L. Allen, his heirs or assigns should be unable to deliver to Dr. Peter Wehner a legal assignment or sublet of the lease and a marketable title, then all moneys paid by Dr. Peter Wehner to Alexander L. Allen shall be refunded with 5 1/2% interest by Alexander L. Allen. * * *" Wehner paid to petitioner, in January of 1947, the sum of $1,000 in two checks, one for $800 and the other for $200, both of which were deposited in petitioner's Cincinnati bank account. Said sum of $1,000 was a return of capital from which no gain or income was realized. Early in 1947, Wehner also delivered to petitioner several checks (consisting of the checks payable to Dr. Wehner and endorsed over to petitioner) totaling $1,540, referred to above, which were deposited in petitioner's bank account in Chattanooga but were not honored by the drawee upon presentation for payment and were charged back to petitioner's account. Petitioner had also occupied another three-story building at 19 East Eighth Street, Cincinnati, under a lease arrangement. *213 During the course of petitioner's tenancy the building was damaged by fire. The owner of said property, Katherine Hagen, carried fire insurance on the building, but the proceeds of the insurance policy were about $1,000 less than the estimated amount required to rehabilitate the premises. The owner, an elderly widow, did not wish to undertake the extensive repairs occasioned by the fire. On April 13, 1944, petitioner and Katherine Hagen executed a 10-year lease agreement, including an option to purchase said building at the termination of the lease, April 14, 1954. The pertinent provisions of the lease are as follows: "It is understood and agreed between the lessor and lessee, their heirs and assigns, that the lessee shall have permission to make the following structural changes in the improvements on the above described premises, provided said improvements are made pursuant to permit duly obtained from the Building Commissioner of the City of Cincinnati and are duly carried out under the supervision of said Commissioner and in accordance with the Building Code of the City of Cincinnati. The lessee, his heirs and assigns hereby agrees and covenants to make the following improvements *214 in such manner and under such supervision provided the lessee, his heirs and assigns, should undertake to make the same. "(A) Install a new front to said building on the sidewalk level and at the lot line, dropping first floor to the sidewalk level so as to improve the first floor for retail store purposes. Also, to install separate entrance, stairway, elevator, etc., to the upper floors in substitution of the means of ingress and egress now existing. "(B) Change the heating system of the building, gas, water and electric installations, etc., so as to provide for separate services to the individual floors of the budiling. "(C) Install additional metal windows in west wall of building where same abuts areaway in the rear of the premises adjoining on the west. "It is understood and agreed that all improvements made by the lessee shall be paid for by him, his heirs and assigns, as rapidly as made, and that all of said improvements as soon as made shall become the property of the lessor, her heirs and assigns, except that special plumbing, bath, steam and toilet facilities installed by the lessee shall remain his property and may be removed by him upon the expiration of this lease, *215 * * * "All payments, agreements and covenants provided for in this lease having been faithfully kept by the lessee, his heirs and assigns, the lessee shall have the privilege of purchasing said premises at the termination of this lease for Twenty Five Thousand Dollars ($25,000.) less all payments made by lessee to credit of principal of said purchase price. Yielding and paying therefor, during the said term a sum of money annually as rent equal to six per cent (6%) on the unpaid balance of said purchase price, payable in quarterly installments beginning July 15, 1944; and in addition thereto the sum of One Thousand Dollars ($1000.) annually to apply on the principal of said purchase price; said interest payments to be ratably reduced at the end of each year in proportion as the unpaid balance of the purchase price is reduced. * * *
"It is understood and agreed that payments of principal under the terms of this lease may not be anticipated and that in the event of default by the lessee, his heirs and assigns, in making any payment under this lease or in keeping any of the other covenants provided for in this lease required by the lessee to be kept, all payments made by the *216 lessee, his heirs and assigns, whether of principal or interest, shall be deemed and considered as rent to be retained by the lessor and not as payments of principal to the credit of the lessee. * * *
"It is understood and agreed that the lessee shall make all repairs at his own expense made necessary or desirable by reason of the recent fire in said premises. It is further understood and agreed that the lessee shall make all repairs, inside and outside of said premises, during the term of this lease in order to keep said premises in as good or better condition than they were prior to the event of said recent fire in said premises." The parties also agreed that the proceeds of the insurance policy on said building, estimated to be $3,637.51, were to be paid to Katherine Hagen. Petitioner spent about $4,637.51 in repairing the damage resulting from the fire. He also installed a central heating plant and had the building remodeled into 13 efficiency apartments at a cost of $5,652. Late in 1946, petitioner arranged to sell the 19 East Eighth Street property to the Jack Malloy Post No. 35 of the American Legion in Cincinnati, Ohio, for $40,000, of which amount the purchasers *217 withheld $1,500 as a guarantee that petitioner would make certain restorations and give possession at the time agreed. The said $1,500 has not been paid to petitioner. The transaction was consummated on January 2, 1947. Petitioner had previously made two principal payments of $1,000 each to Mrs. Hagen. The First National Bank of Cincinnati, which had granted a mortgage loan of $39,000 to the Malloy Post, handled the escrow settlement and disbursed the $39,000 by checks as follows: Amount
Endorsed
2nd Endorsement
$27,000.00
Katherine Hagen
8,021.25
A. L. Allen, M.D.
328.75
A. L. Allen, M.D.
Katherine Hagen
1,850.00
A. L. Allen, M.D.
Reliable Realty
Co.
1,443.82
Blank
356.18
Blank
The item of $328.75 represents interest paid by petitioner to the owner. That of $1,850 represents real estate commissions paid by petitioner. The checks for the remaining two items were turned over to the Malloy Post. The following items are includible in the computation of petitioner's adjusted cost basis: $ 2,000.00
Principal payments to Mrs.
Hagen prior to sale to Mal-
loy Post
27,000.00
Additional payments to Mrs.
Hagen at time of settlement
with Malloy Post
4,637.51
Payments by petitioner result-
ing from fire damage
5,652.00
Improvements made by peti-
tioner
$39,289.51
Less 288.00
Depreciation
$39,001.51
Adjusted basis
*218 The amount of $8,021.25 distributed to petitioner in cash at the settlement with the Malloy Post and deposited by him in his Cincinnati bank account represented a return of capital and is not includible in petitioner's income for 1947. Our previous Findings of Fact have covered $9,021.25 of the total of $12,034.36 deposited in 1947 in petitioner's bank account in Cincinnati. Of the remaining $3,013.11, we find as an ultimate fact that $2,513.00 represented ordinary income from petitioner's business and practice. In November 1946, preparatory to moving his practice from Cincinnati, Ohio, petitioner purchased two old residence-type buildings at 822 and 909 Vine Street, Chattanooga, Tennessee. In February 1947, he purchased a third residence-type building in the same city at 502 Forrest Avenue. At the time of purchase, the house at 822 Vine Street was being operated as a rest home, the house at 909 Vine Street had been closed and unoccupied for two years, and the house at 502 Forrest Avenue was being used as a doctor's clinic. Neither of the Vine Street buildings was suitable for the petitioner's purpose until numerous alterations and improvements had been accomplished. Petitioner *219 installed one or two bath rooms in each of the Vine Street houses and also installed concrete walks around the buildings. At 909 Vine Street, Alexander Allen found that much of the wood around the basement windows was rotted; that water pipes in the walls had corroded; that it was necessary to rebuild some of the foundation with concrete building blocks; and that it was necessary to replace the wood framed windows with steel framed windows and install an outside steel fire escape. Alterations were also made to the interior of this building. At 822 Vine Street, the entire basement was rebuilt and special hydrotherapeutic equipment was installed for treating patients. The clinic building at 502 Forrest Avenue did not require as extensive renovation and remodeling as the other two buildings. At 502 Forrest Avenue, during 1947, petitioner made expenditures, among other things, for carpentry, refrigerator repairs, sanding floors, repairing windows, replacing electric light bulbs and fittings, painting and wallpapering, repairs to the heating system, the installation of metal brackets into the walls, and building supplies. During the year 1947, Allen spent approximately $22,000 in reconditioning, *220 remodeling and making incidental repairs to the three aforementioned buildings. In petitioner's tax return for 1947, he reported in Schedule C - "profit (or loss) from business or profession" - a loss of $2,727.28 with a notation "see schedule attached." On the attached schedule he reported "Receipts - fees from Patients $25,452.00" and under the heading "Disbursements" listed 21 categories of expenses totaling $28,179.38. Respondent disallowed as a business expense an item deducted as "Building Repairs $2,390.10," but allowed all other expense items claimed by petitioner. All of the expenditures with respect to 522 and 909 Vine Street which petitioner claims as a basis for deduction for repairs were part of an over-all plan for the general rehabilitation and permanent improvement of said buildings which added to their value and useful life. The following expenditures with respect to 502 Forrest Avenue were ordinary and necessary expenses for repairs: Nature of Work
Amount
Paper and paint
$ 73.40
Floor finish
50.81
Repairing windows (allocated
from total of $128 spent on all
three buildings)
43.00
Electric light bulbs and fittings
97.13
Carpentry
47.73
Heating
19.50
Refrigerator
33.00
Total
$364.57
*221 The remaining items of expenditures claimed as repairs with respect to 502 Forrest Avenue were capital expenditures or nonsegregable therefrom. Included in the item of "Building Repairs" deducted on petitioner's return was the amount of $1,320.87 for salaries which he paid to employees. This amount was paid in addition to the sum of $1,559 which petitioner deducted as payroll expense. The item of $1,320.87 was an ordinary and necessary expense. Opinion FISHER, Judge: Petitioner does not question the propriety of respondent's use of the bank deposit method in reconstructing petitioner's gross receipts for the year before. The major areas of dispute revolve around the issue of whether and to what extent the method was correctly used. Petitioner likewise does not dispute the amount of the deposits in both the Cincinnati and Chattanooga bank accounts, but questions respondent's failure to exclude numerous items therefrom in calculating the amount of taxable income. We consider first the items relating to the Cincinnati bank account and the sale of interests in Cincinnati properties. The total deposits in 1947 in said account were $12,034.36. We think it is clear that we must *222 eliminate the amount of $1,000 representing the deposits of checks of $800 and $200 from Wehner. We have found as a fact that this amount represents a return of capital. The evidence supports the view that it was a payment on account of the principal sum due by Wehner in purchasing petitioner's interest in 110 East Eighth Street. The payment was made at approximately the time when a principal payment was due under the contract, and too early to represent interest. The recitals in the contract with Wehner convincingly support the view that petitioner had previously paid substantially more than $1,000 of principal in obtaining his interest therein, so that he had not as yet recovered his basis. Thus, no capital gain resulted from Wehner's payment, and it is clear that it did not represent ordinary income. We likewise exclude, as a return of capital, the amount of $8,021.25 which petitioner received and deposited at the time of consummation of the sale of the 19 East Eighth Street Building. Although respondent disallowed petitioner's claim for loss on the sale of the property, there was no determination in the statutory notice (nor claim in the amended answer) that petitioner had realized *223 a gain. We add that we think such a determination or claim would have been unavailing, because, although the selling price reported in petitioner's return ($40,000) exceeded petitioner's adjusted basis by $998.49, some $1,500 of the purchase price was withheld, and was not paid to petitioner in 1947, if at all. Respondent further suggests that petitioner's basis be reduced to the extent of $3,637.51, the approximate amount of insurance proceeds paid to Mrs. Hagen. We find no merit in this contention because the evidence is clear that petitioner's obligation to her (as used in determining adjusted basis) was not reduced by the above amount. On the other hand, we must sustain respondent in disallowing the loss claimed by petitioner on his return growing out of the sale of 19 East Eighth Street. Since the sale price exceeded basis, the withholding of $1,500 did not change what might ultimately have been a gain into a loss. The purchaser remained liable for the $1,500 and while the evidence shows that it was not paid, there is nothing to indicate whether, and if so, when the liability was released, discharged or became worthless. We have found as an ultimate fact that, of the remaining *224 $3,013.11 deposited in the Cincinnati bank account, $2,513.11 represented ordinary income from petitioner's business and practice. Here, the burden of proof is upon respondent, who first raised the issue relating to Cincinnati bank deposits in his amended answer. No determination relating thereto was made in the statutory notice. We think, upon the whole record, that respondent has sustained his burden to the extent indicated by our ultimate finding. The fact of the deposit is admitted. Petitioner testified that he continued to treat patients in Cincinnati during the early months of 1947. Such patients had come in and paid for one or two months treatment and petitioner stayed and finished up the treatments. Wehner came into only partpossession in January, and did not take over completely until March of 1947. The only apparent source of at least the greater part of deposits in the Cincinnati bank which have not already been accounted for was petitioner's remaining practice in Cincinnati. His property transactions have been accounted for and he suggests no others. There is likewise no suggestion of loan, gift, or inheritance as a source of such deposits. Petitioner asserts, however, *225 that the money in the Cincinnati bank was redeposited in the Chattanooga bank, and should not be duplicated in determining his income. We think it is better to consider this issue in our analysis infra of the deposits in the Chattanooga bank. Petitioner also asserts that some part of the remaining deposits in the Cincinnati bank represents checks of out-of-town patients which he cashed for their use and which did not represent income to him. He does not suggest the amount of such items. Under the above circumstances, we are faced with the proposition, on the one hand, that at least some part of such remaining deposits in the Cincinnati bank represented income while some part represented checks which were cashed. The record does not disclose the precise amount of either. We think the larger part represents income from practice. We recognize that the burden is upon respondent. We must resolve the issue according to our judgment based upon what tangible evidence we find in the record. We hold, therefore, that $2,513.11 is to be deemed ordinary income, and that $500 is to be excluded in determining income. See Cohan v. Commissioner (C.A. 2, 1930) 39 Fed. (2d) 540. We *226 next turn to our analysis of the issues relating to deposits in the Chattanooga bank. It is admitted that the total of Chattanooga deposits in 1947 was $44,033.60. Petitioner reported gross receipts in the amount of $25,452 in his income tax return. Respondent, in his statutory notice, included the difference of $18,561.60 in petitioner's gross income. Of the above amount of $18,561.60, $7,790 has been eliminated by stipulation. This is the total of the following items: $5,050 representing a loan from Lydia DeWitt; $1,200 representing part of a loan from Nancy B. Gerrish; and $1,540 representing checks received from Wehner which were charged back to petitioner's account upon nonpayment. Respondent concedes, on brief, that an additional amount of $5,000 is to be eliminated. This amount represented part of the return of capital arising out of the sale of petitioner's interest in the property at 19 East Eighth Street, Cincinnati. The $5,000 was withdrawn from the Cincinnati bank and redeposited in the Chattanooga bank. On the basis of the foregoing, the amount in issue is reduced from $18,561.60 to $5,791.60. Petitioner contends that $550 of his deposits made during 1947 in the *227 Chattanooga bank constituted a loan and should be excluded from gross income for that year. The parties stipulated that petitioner borrowed $1,750 from Nancy Gerrish and that on March 5, 1947, $1,200 of this amount was deposited to his bank account. We have already eliminated the $1,200 from gross income. Petitioner testified that he obtained the additional $550 in two or three payments, one of which was $250 in cash received when he was still practicing in Cincinnati, and that he ultimately deposited the $550 to his bank account in Chattanooga. Respondent takes the view that the deposit of the $550 is not substantiated. Respondent's determination is prima facie correct, and the burden of proof is upon petitioner. Here petitioner relies only upon vague recollection dating back to a period many years prior to the hearing. He does not recall whether the $550 was turned over to him in two or three payments. He asserts the payments were in cash. His own testimony is to the effect that he regularly carried with him cash in substantial amounts which he used for various outlays. It is at least possible that the $550 item was mingled with such funds. Petitioner does not claim that he remembers *228 the date of the deposit or even the circumstances. It is stipulated that the $1,200 was deposited on March 5, 1947. The total deposit on that date was $1,491.05, so that it could not have included the $550. Analysis of the bank statement discloses numerous deposits during 1947, but there is nothing to identify them with the item in question or any part of it. We realize the handicap which petitioner faces in his effort to establish the fact that the $550 was actually deposited, but we cannot supply his proof for him, and must hold that he has failed to meet the burden of proving that the item in question was in fact deposited. See Burnet v. Houston, 283 U.S. 223 (1931). We have already eliminated from income the sum of $1,540 which was deposited in the Chattanooga bank, representing a payment by Wehner, which was charged back to petitioner's account upon nonpayment. Petitioner claims that Wehner repaid the said $1,540, and that it was again deposited. Petitioner takes the position that it should be excluded from gross income on the theory that it was a payment on an executory contract contingent upon future passing of title. We do not think it necessary to consider *229 petitioner's theory. We have carefully examined the confused testimony on this issue and fail to find acceptable evidence establishing either that Wehner repaid the sum of $1,540, or, if he did, that it was deposited in petitioner's Chattanooga bank account. We hold, therefore, that petitioner has failed to meet his burden of proof on this issue. See John J. Hoefle v. Commissioner (C.A. 6, 1940) 114 Fed. (2d) 713, 714, affirming a Memorandum Opinion of this Court [CCH]. We have eliminated from income attributable to deposits in the Cincinnati bank the sum of $1,000 paid by Wehner to petitioner because the amount so paid represented return of capital. Petitioner claims, however, that this amount was withdrawn from the Cincinnati bank and redeposited in the Chattanooga bank, and should therefore be eliminated from the gross receipts attributed to deposits in the Chattanooga bank. Petitioner also claims specifically that items totaling $3,000 (alleged to be part of the total of $8,021.25 which we have eliminated in relation to the Cincinnati bank account as a return of capital) was withdrawn and redeposited in the Chattanooga bank, and generally that all funds in the *230 Cincinnati bank account were withdrawn and redeposited in the Chattanooga bank account. Again we are presented with broad, general and confused testimony which is not supported by any correlation with or between the records of deposits and withdrawals covering the Cincinnati and Chattanooga bank accounts. Under the circumstances, except for the amount of $5,000 conceded by respondent to be a duplication (referred to supra), we cannot accept the general and uncorroborated statements of petitioner as sufficient to meet his burden of proof of duplications. Petitioner claims that he cashed checks during 1947 for patients and workmen which checks were deposited in the Chattanooga bank account. (These are in addition to those discussed supra in relation to the Cincinnati account.) We think it reasonable to believe that petitioner did so. The record does not disclose the amount of such checks, but we feel justified, under the rule of Cohan v. Commissioner, supra, in making an estimate which will necessarily bear against petitioner under the circumstances. We, therefore, eliminate from gross receipts attributable to deposits in the Chattanooga bank the amount of $1,000 to *231 reflect the cashing of checks which did not give rise to income. Petitioner sold a neon light for $175. He had held it for more than six months. He failed to establish an adjusted basis, so that the entire amount, which was deposited in the Chattanooga bank, must be recognized as gain, but is to be treated as lon-term capital gain and not as ordinary income. Petitioner has failed to meet the burden of proving that, subject to the adjustments called for, supra, the remaining deposits in the Chattanooga bank represented other than ordinary income, and to that extent we sustain respondent's determination. During the taxable year 1947, petitioner spent approximately $22,000 for labor and materials on three buildings which he had then recently purchased in Chattanooga, Tennessee, for his practice of naturopathy. On his tax return for that year, petitioner treated $2,390.10 of the total expenditures as deductible expense for repairs of said property. Respondent disallowed the entire deduction on the ground that such expenditures represent capital improvements. Petitioner contends that about $1,069.23 of the $2,390.10 is deductible under section 23(a)(1)(A) of the Internal Revenue *232 Code of 1939 as the cost of ordinary and necessary repairs, and that the remainder in issue amounting to $1,320.87 is deductible as salary expense (for janitorial work relating to the buildings), which he failed to include as deductions in his 1947 return. In the alternative, petitioner contends that the building at 502 Forrest Avenue required no alterations or remodeling, and that $455.72 of the $2,390.10 in controversy is currently deductible since that amount was spent only for minor repairs on said property, with no part of the benefit being allocable to the other buildings. Respondent, on the other hand, contends that all of the so-called repairs represent part of a general plan of permanent betterment of the three buildings in question and that under section 24(a) of the Code the expense thereof is not so deductible. The authorities are to the effect that where the general plan under which the work is performed is one of rehabilitation and permanent betterment, expenditures incident to such general plan which might ordinarily constitute deductible expenses for repairs will be disallowed as deductions in the current year even though they may be segregated. Home News Publishing Co., 18 B.T.A. 1008, 1010 (1930); *233 California Casket Co., 19 T.C. 32 (1952); Ethyl M. Cox, 17 T.C. 1287 (1952). We hold that the rationale in the above cases is applicable to all of the expenditures relating to the Vine Street properties, which expenditures were made not for incidental repairs, but as an integral part of the over-all plan for the general rehabilitation, remodeling and improvement of the two residence-type buildings. It is clear that much that was done in renovating the Vine Street properties was in the nature of permanent betterments. Petitioner, among other things, installed new bathrooms in each of the Vine Street buildings, and constructed cement walks around the grounds. At 909 Vine Street, he erected an outside steel fire escape, replaced part of the foundation, and installed steel framed windows. At 822 Vine Street, the entire basement was rebuilt for the accommodation of hydrotherapeutic equipment. It is our view that the foregoing structural alterations and the remaining work incidental to the over-all plan materially added to the value of the said buildings and gave them an extended useful life for petitioner's purpose. J. [I.] M. Cowell, 18 B.T.A. 997, 1002 (1930), *234 Joseph Merrick Jones, 24 T.C. 563, 568 (1955). From the record before us, it is evident from the nature and cost of the expenditures made on 502 Forrest Avenue (which was already being used as a clinic or hospital when acquired by Allen) that they were not made pursuant to the general plan of rehabilitation and permanent betterment contemplated for the Vine Street property, but rather (for the most part) were incurred to keept the building in an ordinarily efficient operating condition. In our opinion, except for a few questionable items, the expenditures on 502 Forrest Avenue were incidental repairs which neither materially added to the value of the property nor appreciably prolonged its life. Based upon consideration of all the evidence, we hold that the total sum of $364.57 expended on 502 Forrest Avenue as itemized in our Findings is deductible for ordinary and necessary expenses. Petitioner also claimed that he spent $204.46 out of a total of $1,587.06 on "builders' supplies" for 502 Forrest Avenue. It may be that some part or all such expenditure represents an item or items currently deductible. In order that we may allow a deduction on account thereof, however, *235 the nature of the item must be made clear to us. Henry F. Cochrane, 23 B.T.A. 202, 210 (1931); George A. Manos v. Commissioner, (C.A. 6, 1951) 187 Fed. (2d) 734, affirming a Memorandum Opinion of this Court [8 TCM 1025;]. Obviously, the general term used to designate the item "builders' supplies" is too vague for us to determine whether the materials were used for repairs or for capital improvements. Petitioner has therefore failed to meet the burden of proof with respect to this item. Petitioner also testified that he spent $76.50 for metal wall brackets, especially designed to hold certain examination tables steady. We regard the cost thereof as a capital expenditure and not a deductible expense. The installation of the metal brackets in the walls did not represent a repair but was a betterment designed to render the building more suitable for the use of petitioner in his practice. Accordingly, petitioner has failed to establish the right to deduct the cost of such installation as an ordinary and necessary repair expense. Petitioner likewise argues that several other items of expense, such as plumbing and lead sheets for the showers, *236 are repairs. He did not, however, indicate on which of the buildings such expenditures were made, and we are unable to determine their function with respect to other work performed on the properties in question. Accordingly, we must hold that such unsegregated items are not currently deductible. Henry F. Cochrane, supra. Petitioner contends that salaries amounting to $1,320.87 paid to two employees, who performed janitorial and gardening duties on the grounds of the three buildings, had been mistakenly charged to the "repair" expenditures in issue and are currently deductible in addition to the "payroll" deduction of $1,559.30 taken in his return. After a careful examination of the somewhat vague testimony, we are satisfied that the salary item of $1,320.87 is not a duplication of the deduction taken on the return, and that it was in fact expended for services rendered by employees under circumstances which did not render it capital in nature. We hold, therefore, that petitioner is entitled to a deduction for the $1,320.87 item in addition to the payroll deduction taken on his return. Decision will be entered under Rule 50.